RENE L. VALLADARES
Federal Public Defender
Nevada State Bar No. 11479
MARGARET W. LAMBROSE
Assistant Federal Public Defender
Nevada State Bar No. 11626
411 E. Bonneville, Ste. 250
Las Vegas, Nevada 89101
(702) 388-6577/Phone
(702) 388-6261/Fax
Maggie_Lambrose@fd.org

Attorney for David Kent Fitch

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>DAVID KENT FITCH,<br><br>　　　　　Defendant. | Case No. 2:04-cr-00262-JCM-PAL<br><br>**Emergency Motion for Order Reducing Sentence or Modifying Judgment under 18 U.S.C. § 3582 (c)(1)(A)(i) and Authorizing Any Remaining Portion of His Sentence to be Served on Home Confinement**<br><br>**(Expedited Ruling Requested due to COVID-19 Pandemic)** |

### I.　　Introduction

Defendant David Fitch respectfully moves this Court to grant compassionate release under 18 U.S.C. § 3582(c)(1)(A) based on the "extraordinary and compelling reasons" presented by the COVID-19 pandemic. This Court should grant relief because at 61 years old, Mr. Fitch is suffering from several chronic medical conditions, leaving him especially vulnerable to COVID-19 and causing him constant pain while also limiting his mobility. Mr. Fitch has suffered many

years with kidney failure, heart disease, hypertension,[1] a degenerative disc in his neck, severe GERD, an enlarged prostate with urethral obstruction, colonic polyps, Barrett's esophagus, bunions with hallux valgus and arthritis.[2] Mr. Fitch's back issues, arthritic knees, and malformed feet make it painful for him to walk and requires him to sit most of the time.[3]

The grave situation the COVID-19 outbreak poses inside the Bureau of Prisons (BOP) afflicting staff and inmates and causing multiple inmate deaths could be a death sentence for Mr. Fitch because his chronic diseases and limited mobility make self-care and social distancing nearly impossible while in prison.

Compassionate release is also appropriate because Mr. Fitch has been in custody since 2000[4] and he has served nearly 16 years of his sentence for this conviction.[5]

---

[1] Heart disease and kidney disease are two of the conditions that the CDC has unambiguously explained place Mr. Fitch at greater risk of COVID-19. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html. Moreover, studies are finding that those with hypertension are more likely to contract COVID-19, have worse symptoms and die from the infection. https://www.webmd.com/lung/coronavirus-high-blood-pressure#1

[2] Exhibit A "medical records" filed under seal. Mr. Fitch's enlarged prostate and urethral obstruction as well as his degenerative disc disease are documented as far back as the 2007 PSR. *See* PSR ¶¶ 114-115; *see also* Fitch sentencing memorandum and letter in support of sentencing from Dr. Grover. ECF 218. Moreover, although the BOP approved Mr. Fitch for spine surgery in 2016, to date he still has not received it.

[3] Exhibit B "Picture of Mr. Fitch's feet."

[4] Mr. Fitch was initially arrested in the companion case, *United States v. David Kent Fitch*, 2:00-cr-00050-KJD. Mr. Fitch has been in continuous federal custody since 2000.

[5] Mr. Fitch made his initial appearance on this case in July 2004. ECF No. 4. It appears that Mr. Fitch may have received partial credit toward this sentence from the date of his initial arraignment in this case. However, because the record is somewhat unclear, undersigned counsel requested a calculation from the BOP on May 26, 2020. To date, counsel has not received a response from the BOP. Due to the urgent nature of this matter, counsel could not wait any longer to file this

Mr. Fitch has a strong release plan as he has tremendous family support from his sister Kathy Densmore.[6] Ms. Densmore, a retired educator and principle, lives in Waco, Texas with her husband, Mr. Densmore, a retired educator and minister. Mr. and Ms. Densmore have a room in their home for Mr. Fitch and they will help Mr. Fitch get the medical treatment he has needed (but not received) for years.

For these reasons, Mr. Fitch requests an order modifying his sentence to time served or, in the alternative, modifying his Judgment to allow him to serve a portion of his sentence on home confinement, under the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, 134 Stat. 281 (March 27, 2020), the Second Chance Act of 2007, and 18 U.S.C. § 3621.

**II.   Charges and Time Served**

Mr. Fitch has been in custody since 2000 for fraud related crimes that occurred between 1999 and 2000. When charging Mr. Fitch, the government brought two separate indictments even though the charges arose out of the same fraudulent scheme. ECF No. 218.

In 2000, the government indicted Mr. Fitch in *United States v. David Kent Fitch*, 2:00-cr-00050-KJD. ECF No. 291. Mr. Fitch was arrested in February 2000. *Id.* In July 2000, Mr. Fitch pleaded guilty to all 10 counts in the indictment without a plea agreement. *Id.* The court sentenced Mr. Fitch to 97 months, the high-end of the guideline range, in November 2000. ECF No. 218.

The government then indicted Mr. Fitch in this case in 2004. ECF No. 1. In June 2007, a jury convicted Mr. Fitch of two counts of Fraudulent Use of an Access Device, eight counts of Bank Fraud, two counts of Attempted Fraudulent Use of an

---

motion. Undersigned counsel will update the record once she receives the BOP calculation.

[6] Exhibit C "Letter from Kathy Densmore to Judge Mahan."

3

Access Device, two counts of Laundering Monetary Instruments and one count of Money Laundering. ECF Nos. 198, 230.

In October 2007, this Court sentenced Mr. Fitch to 262 months imprisonment, or 21 years and 10 months. ECF No. 224, 230.  It appears during sentencing,  this Court was silent as to whether this sentence should run concurrent to the 97-month sentence Mr. Fitch received in *United States v. David Kent Fitch*, 2:00-cr-00050-KJD.[7] Because the judgement of conviction did not impose  concurrent sentences, the BOP ran the sentences consecutively.  If not for the consecutive sentences, Mr. Fitch would already be out of custody.[8]

### III. Legal Framework of Compassionate Release

#### A. Compassionate Release Before the First Step Act

The compassionate release statute empowers courts to reduce a defendant's sentence whenever "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i).  The statute was first enacted as part of the Comprehensive Crime Control Act of 1984 to serve as a "safety valve" to enable judges to reassess whether a sentence reduction was warranted by factors addressed through the abolished parole system.[9] The Sentencing Commission defined "extraordinary and compelling reasons" as including medical conditions, age, family circumstances, and "other reasons." U.S.S.G. § 1B1.13, comm. n.1(A).

---

[7] This representation is based on Mr. Fitch's memory of the 2007 sentencing hearing. Undersigned counsel ordered the transcript of the sentencing hearing and will supplement the record with the transcript when she receives it.

[8] This Court also imposed a concurrent supervised release terms of 5 years. ECF No. 230.

[9] S. Rep. No. 98-225, at 121 (1983).

4

As originally enacted, the statute left sole discretion for filing compassionate release motions with the Director of the Bureau of Prisons ("BOP"). But, the BOP rarely filed motions on behalf of inmates who met the eligibility criteria.[10]

### B.     Compassionate Release After the First Step Act

On December 21, 2018, the President signed the First Step Act into law, changing § 3582, most significantly by allowing defendants to directly petition courts for relief instead of leaving relief decisions solely with the BOP. 18 U.S.C. § 3582(c)(1)(A).

The compassionate release statute, as amended by the First Step Act, authorizes district courts to grant relief whenever "extraordinary and compelling reasons" warrant a reduction, consistent with the sentencing factors outlined in 18 U.S.C. § 3553(a) and the Sentencing Commission's applicable policy statements—regardless of the BOP's position. Thus, a district court can grant a sentencing reduction under 18 U.S.C. § 3582(c)(1)(A), where "extraordinary and compelling

---

[10] According to BOP statistics provided to Congress, BOP received 3,122 requests for compassionate release between 2014 and 2017. Of those, 817 requests involved terminal illness, with the BOP only approving 306 of those requests—less than 10% of the total requests. It also took the BOP an average of almost 7 months to make its approval decision, during which **81 prisoners died waiting for the BOP's answer**. *See* https://compassionater elease.com/compassionate-release-statistics. *See also United States v. Beck*, No. 1:13-CR-186-6, 2019 WL 2716505, at *6 (M.D.N.C. June 28, 2019) (noting BOP's "grossly inadequate treatment" and granting compassionate release); Dep't of Justice, Office of the Inspector General, *The Federal Bureau of Prisons' Compassionate Release Program*, p.11 (April 2013), available at https://oig.justice.gov/reports/2013/ e1306.pdf ("The BOP does not properly manage the compassionate release program, resulting in inmates who may be eligible candidates for release not being considered."); U.S.S.G. § 1B1.13, n.4 (admonishing BOP for its past failure to pursue relief on behalf of eligible inmates).

reasons warrant such a reduction" and "a reduction [would be] consistent with applicable policy statements issued by the Sentencing Commission."

The policy statements explain "extraordinary and compelling reasons exist" where a defendant "(i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." See U.S.S.G. § 1B1.13 cmt. n.1(A).

The Sentencing Commission also directs courts to consider whether the defendant poses "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," and "the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable." *See* U.S.S.G. § 1B1.13.

Mr. Fitch's request for compassionate release does not ask the Court to review a BOP decision. Rather, the statutory responsibility to decide whether to extend compassionate release to Mr. Fitch rests solely with the Court. Since the First Step Act took effect, courts have continued to expand compassionate release, finding "extraordinary and compelling reasons" in circumstances beyond, or combined with, the factors of age, medical condition, and family needs the BOP has typically identified.[11]

---

[11] *See, e.g., United States v. Redd,* No. 1:97-cr-0006-AJT, 2020 WL 1248493, at *8 (E.D. Va. Mar. 16, 2020) ("[T]he Court joins other courts in concluding that a court may find, independent of any motion, determination or recommendation by the BOP Director, that extraordinary and compelling reasons exist based on facts and circumstances other than those set forth in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C) . . . ."); *United States v. Young*, No. 2:00-cr-0002-1, 2020 WL 1047815, at *6 (M.D. Tenn. Mar. 4, 2020) (recognizing "a majority of the district courts that have considered the issue have likewise held, based on the First Step Act, that they have the authority to reduce a prisoner's sentence upon the court's independent finding of extraordinary or compelling reasons"); *United States v. Maumau*, No. 2:08-cr-0758-TC, 2020 WL 806121, at *3 (D. Utah Feb. 18, 2020) ("Thus, courts may, on motions by defendants, consider whether a sentence reduction is warranted for extraordinary and compelling reasons other than

### C. Mr. Fitch waited 30 days after submitting his request to the Warden to petition this Court for compassionate release

Mr. Fitch applied for compassionate release with the Warden of FCI Greenville on April 3, 2020, and to date he has not received a response. Under 18 U.S.C. § 3582(c)(1)(A), a defendant ordinarily must exhaust administrative remedies with the BOP (unless the court waives exhaustion) or wait 30 days after submitting a request for compassionate release to the warden, whichever comes first, before petitioning a court for relief. 18 U.S.C. § 3582(c)(1)(A). As Mr. Fitch submitted his request to the Warden on April 3, 2020, the 30-day window for the prison to respond passed on May 3, 2020. The 30-day wait period is fulfilled.

## II. Extraordinary and compelling reasons exist to reduce Mr. Fitch's sentence

As Mr. Fitch has served over 20 years in prison, this Court can be sure that Mr. Fitch has been sufficiently punished. Although a necessary goal of sentencing is punishment and deterrence, society also has an interest in being compassionate for older defendants who are particularly vulnerable.

The present motion for compassionate release is based on conditions that have radically changed in the 20 years since the underlying offense. Mr. Fitch is

---

those specifically identified in the application notes to the old policy statement." (citation and internal quotation marks omitted)); *United States v. Schmitt*, No. CR12-4076-LTS, 2020 WL 96904, at *3 (N.D. Iowa Jan. 8. 2020) ("agree[ing] with those courts" that have concluded "Guideline § 1B1.13 cmt. n.1 does not restrain a court's assessment of whether extraordinary and compelling reasons exist to release a defendant"); *United States v. Valdez*, No. 3:98-cr-0133-01-HRH, 2019 WL 7373023, at *2 (D. Alaska Dec. 31, 2019) ("This court concludes that it is no longer bound to look to the director of the Bureau of Prisons for a definition of extraordinary and compelling reasons beyond application note 1(A) through (C)"); *United States v. Rodriguez*, No. 17-cr-00021-WHO-1, 2019 WL 6311388, at *7 (N.D. Cal. Nov. 25, 2019) ("This court follows the growing number of district courts that have concluded that, in the absence of applicable policy statements, courts 'can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. 1B1.13 cmt. N.1 (A)-(C) warrant compassionate release.'").

7

now an old man who can barely walk and whose health has been declining for years. Mr. Fitch meets the criteria for compassionate release for several reasons: (1) he is 61 years old and at high-risk for COVID-19 infection, coupled with his incarceration during the devasting COVID-19 outbreak; (2) he has served at least 10 years or 75% of his imprisonment term, because he has served almost 16 years of his sentence; (3) he poses a minimal risk to public safety, which can be managed through home confinement and supervision conditions; and (4) the 18 U.S.C. § 3553(a) factors support his release.

### A. Mr. Fitch suffers from comorbidities, placing him at high risk of becoming seriously ill from Covid-19, which is spreading uncontrolled throughout the BOP

To determine what constitute "extraordinary and compelling circumstances," Congress tasked the Sentencing Commission with developing criteria. *See* 28 U.S.C. §994(t) (noting that, for "the sentencing modification provisions in §3582(c)(1)(A))," the Commission "shall describe what should be considered extraordinary and compelling reasons . . . ."). The Commission, in turn, set out three specific categories (medical conditions, age, and family circumstances), as well as a catch-all category ("other reasons"), which includes "extraordinary and compelling reason[s] other than, or in combination with," an individual's medical conditions, age, or family circumstances. *See* U.S. Sentencing Guidelines § 1B1.13 cmt. n.1 (2018).

Mr. Fitch has extraordinary and compelling reasons for a sentence reduction: Mr. Fitch is 61 years old and suffers from comorbidities (kidney failure, heart disease, hypertension), which place him at high risk of becoming seriously ill from COVID-19-related complications.

On March 11, 2020, the World Health Organization ("WHO") officially classified the spread of COVID-19, the disease caused by the novel coronavirus, as a pandemic.[12] On March 13, 2020, the President declared a national emergency due to the evolving threat of the COVID-19 outbreak. To slow the spread of the disease, the Centers for Disease Control and Prevention ("CDC") has broadly advised people to take basic preventive actions, such as avoiding crowds, staying 6 feet away from others, keeping surfaces disinfected, and frequently washing their hands or using hand sanitizer.[13] These precautions are impossible for incarcerated individuals. Public health experts warn that incarcerated individuals "are at special risk of infection" and are "less able to participate in proactive measures to keep themselves safe."[14] The conditions in BOP facilities are therefore, unfortunately, a uniquely hospitable environment for COVID-19 to spread.[15]

COVID is spreading throughout jails and prisons like wildfire. COVID-19 has infected over 29,000 inmates across the country (last tabulated the week of

---

[12] "WHO Characterizes COVID-19 as a Pandemic," World Health Organization (March 11, 2020), https://bit.ly/2W8dwpS.

[13] *Id.*

[14] "Achieving a Fair and Effective COVID-19 Response: An Open Letter to Vice-President Mike Pence, and Other Federal, State, and Local Leaders from Public Health and Legal Experts in the United States" (March 2, 2020), at https://bit.ly/2W9V6oS.

[15] Joseph A. Bick, "Infection Control in Jails and Prisons," *Clinical Infectious Diseases* 45(8): 1047-1055 (2007), available at https://doi.org/10.1086/521910; Vice News, "Sick Staff, Inmate Transfers, and No Tests: How the U.S. is Failing Federal Inmates as Coronavirus Hits" (Mar. 24, 2020), available at https://www.vice.com/ en_us/ article/jge4vg/ sick-staff-inmate-transfers-and-no-tests-how-the-us-is-failing-federal-inmates-as-coronavirus-hits.

May 20, 2020):



These numbers are "almost certainly an undercount," as many facilities are less-than-forthcoming with complete information. Or they simply aren't testing aggressively enough to appreciate COVID-19's spread. Ohio, for example, aggressively tested inmates and uncovered nearly 4,000 positive cases; Arizona, meanwhile, had tested just 172 by the end of April. Many of these infections are inmates in BOP custody. In fact, 70% of people tested in BOP custody are COVID-19 positive.[16]

As of May 25, 2020, 3,144 federal inmates have contracted COVID-19, as well as 403 BOP staff, spread across 52 facilities:

---

[16] "70% of inmates tested have COVID-19: Bureau of Prisons," ABC NEWS (May 1, 2020) https://abcnews.go.com/US/70-inmates-tested-covid-19-bureau-prisons/story?id=70454527

10



And while some states report infection curves are "flattening" in response to aggressive mitigation measures (including social distancing), the same can't be said for the BOP's curve, which continues to climb:



The BOP's infection rate is far above the national average, with those in BOP custody infected at a rate 3.69 times higher:



COVID-19 has infected thousands throughout the nation's prison system—and continues to spread. As this alarming crisis continues to spin out of control in the BOP, the universally recommended antidote is simple: reduce the prison population. Courts are increasingly heeding the call from legal and medical experts by releasing vulnerable inmates from BOP facilities.[17]

---

[17] *United States v. Foster*, No. 1:14-cr-324-02, Dkt. No. 191 (M.D. Pa. Apr. 3, 2020) (noting the "unprecedented" circumstances facing "our prison system" and finding COVID-19 is an extraordinary and compelling basis for release; "[n]o rationale is more compelling or extraordinary"); *United States v. Colvin,* 2020 WL 1613943 (D. Conn. Apr. 2, 2020) (noting defendant's multiple health conditions and inability to social-distance in prison and concluding that "[i]n light of the expectation that the COVID-19 pandemic will continue to grow and spread over the next several weeks, the Court concludes that the risks faced by Defendant will be minimized by her immediate release to home"); *United States v. Perez*, No. 1:17-cr-513-AT, Dkt. No. 98 (S.D.N.Y. Apr. 1, 2020) (granting compassionate release where "[t]he benefits of keeping [Perez] in prison for the remainder of his sentence are minimal, and the potential consequences of doing so are extraordinarily grave"); *United States v. Rodriguez*, No. 2:03-cr-271-AB, Dkt. No. 135 (E.D. Pa. Apr. 1, 2020) (granting release after finding risk factors for COVID-19 constitute extraordinary and compelling reason and noting that prisons are "tinderboxes for infectious disease"); *United States v. Muniz*, Case No. 4:09-cr-199, Dkt. No. 578 (S.D. Tex. Mar. 30, 2020) (releasing defendant serving 188-month sentence for drug conspiracy, given vulnerability to COVID-19); *United States v. Copeland*, No. 2:05-cr-135-DCN (D.S.C. Mar. 24, 2020) (granting First Step Act relief to defendant in part due to "Congress's desire for courts to release individuals the age defendant is, with the ailments that defendant has during this current pandemic"); *United States v. Underwood,* Case No. 8:18-cr-201-TDC, Dkt. No. 179 (Mar. 31, 2020) (encouraging release to furlough of elderly defendant in BOP custody because, even

### B. COVID-19 is deadly, especially for those who fall in the CDC's "high risk" category for serious illness.

But it's not just infections; there are deaths.

On April 28, 2020, Andrea Circle Bear died from Covid-19-related complications.[18] She was 30 years old and serving a 26-month sentence for a non-violent drug offense. She was pregnant, and doctors saved her baby, now orphaned. She fell into the CDC's "high risk" category.

On April 24, 2020, John Ng died from Covid-19-related complications.[19] He was 43 years old and serving a 14-month sentence for conspiracy to engage in prostitution and money laundering. He fell into the CDC's "high risk" category.

These are two of the 59 people who have died from COVID-19-related complications while in BOP custody.[20] And besides all being in BOP custody, nearly all of these 59 individuals shared something else in common: they fell into the CDC's high-risk category for developing serious illness from COVID-19-related complications. That high-risk category includes those who are older (65+), or those who possess underlying medical conditions, including heart disease and kidney disease. This is especially true for individuals with comorbidities (two or more diseases present in one person simultaneously).

---

though no positive of COVID-19 in his facility, "there is significant potential for it to enter the prison in the near future.")

[18] https://bit.ly/BOP-AndreaCircleBear.
[19] https://bit.ly/BOP-JohnNg.
[20] https://www.bop.gov/coronavirus/

13

### C. Mr. Fitch suffers from comorbidities

Mr. Fitch is 61 years old and he suffers from comorbidities—three of them. He suffers from heart disease, kidney failure and hypertension. These vulnerabilities place him at higher risk for severe illness from COVID-19—thrice over.[21] Mr. Fitch is also vulnerable for a different, non-medical reason: he is a male. For reasons unknown, across the world, COVID-19 kills more men than women.[22]

Mr. Fitch has a multitude of medical conditions not being treated by the BOP. In 2016, Mr. Fitch was diagnosed with acute kidney failure and chronic kidney disease.[23] However, the BOP failed to provide Mr. Fitch with urethra surgery even though a urologist advised Mr. Fitch that the blocked urethra is contributing to his kidney failure.[24] To date, the surgery has not been performed despite the BOP telling Mr. Fitch in June 2019 it would be scheduled.[25]

The BOP also refuses to allow Mr. Fitch to see a gastroenterologist for his colon polyps discovered during a colonoscopy in 2014.[26] In 2018, Mr. Fitch had an

---

[21] *See, e.g., U.S. v. Pinkerton*, 2020 WL 2083968 (C.D. Ill. April 30, 2020) (reducing sentence from 84 months to time-served under §3582(c)(1) for Covid-19-related reasons since the defendant suffers from *comorbidities—diabetes and hypertension*—that "increase the serious risk that Covid-19 poses for Defendant.")

[22] "COVID-19 kills more men than women. The immune system may be why," Science News (April 23, 2020) https://www.sciencenews.org/article/coronavirus-covid-19-kills-more-men-than-women-why-immune-system

[23] Ex. A at 0027, 0035.

[24] Ex A at 0033-0038.

[25] *Id.*

[26] Ex. A at 0023.

appointment with a surgeon to address the polyps, but the BOP cancelled that appointment and never reset it.

The BOP has not scheduled Mr. Fitch an appointment with a dermatologist about his suspected skin cancer.[27] The BOP also has not scheduled Mr. Fitch a follow-up appointment with a cardiologist for his heart disease and it refuses to allow Mr. Fitch to consult with an orthopedic surgeon for the deformities in his feet.[28]

Mr. Fitch has needed spine surgery since 2007 for his degenerative disc disease. The BOP approved the surgery in 2016, but 4 years after its approval, Mr. Fitch still has not had the surgery.[29] He continues to suffer in pain every single day.

At age 61 with kidney failure, heart disease, hypertension, degenerative disc disease, and other serious conditions not being properly treated, Mr. Fitch is not getting the medical attention he needs in the BOP and his inability to self-care leaves him at a heightened risk of serious illness or death from COVID-19.[30]

The CDC warns that individuals with chronic medical issues are at a higher risk for sever illness and death, advising them to take immediate preventive actions by carefully sanitizing, social distancing and isolating. Mr. Fitch's age and

---

[27] Ex A at 0015.

[28] Ex A at 0001.

[29] Ex A at 0009.

[30] *United States v. Gorai*, No. 2:18-CR-220-JCM (CWH), 2020 WL 1975372, \*\*2-4 (D. Nev. Apr. 24, 2020) (Granting motion for compassionate release for a defendant who was high risk for COVID-19 because the BOP failed to promptly address his medical needs leaving him unable to self-care.); *see also United States v. Atkinson*, No. 2:19-CR-55 JCM (CWH), 2020 WL 1904585, \*\*2-4 (D. Nev. Apr. 17, 2020)(granting motion for compassionate release where the defendant indisputably ha[d] a preexisting medical condition that ma[de] him particularly susceptible to COVID-19.").

medical conditions put him at significant risk for even more severe and life-threatening illness should he be exposed to COVID-19 while incarcerated. Mr. Fitch's limited mobility also leaves him unable to self-care while in prison because he cannot socially distance or isolate. The uncontrolled outbreak of COVID-19 in the BOP could have fatal consequences for Mr. Fitch.

Based on these facts, Mr. Fitch asks this Court to find his current age, health conditions, and COVID-19's devastating impact on those living in confined spaces are sufficiently serious to satisfy the medical criteria for a reduction in sentence.

### D. Mr. Fitch has been incarcerated for 20 years and he has served almost 16 years of this sentence

The second criterion for a sentence reduction requires that Mr. Fitch have served at least 10 years or 75% of his term of imprisonment, whichever is less. See U.S.S.G. § 1B1.13 cmt. n.1(A).

Here, Mr. Fitch has served almost 16 years in BOP custody on this sentence; therefore, the second criterion is satisfied.

### E. Mr. Fitch poses a minimal risk to public safety and must serve five years of supervised release with this Court's imposed conditions

Under the third criterion, this Court considers whether Mr. Fitch presents "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." See U.S.S.G. § 1B1.13(2). Factors relevant to this inquiry include: (1) the nature and circumstances of the offenses of conviction; (2) the weight of the evidence; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger posed by the defendant's release. 18 U.S.C. § 3142(g).

Mr. Fitch was convicted of fraudulent activity that occurred between 1999 and 2000. The government charged the fraud in two separate indictments resulting in consecutive sentences. If the court consolidated the two cases, or imposed concurrent sentences, Mr. Fitch would be out of custody by now. Mr. Fitch is still incarcerated because these two sentences, based on the same fraudulent scheme, resulted in consecutive sentences. 20 years later, Mr. Fitch is an old man who can barely walk and with serious medical issues that are not being addressed by the BOP. Mr. Fitch has been severely punished and continued incarceration does not serve the goals of sentencing.

Mr. Fitch's age,[31] health conditions (included his limited mobility) and the considerable time served are all characteristics that show he poses a low risk of engaging in further criminal conduct. Moreover, Mr. Fitch informed undersigned counsel that the BOP scored him as a low risk to reoffend. And, any risk can be assuaged through conditions of release such as home confinement or supervision conditions.

Mr. Fitch must serve five years of supervised release under the conditions imposed by this Court. During this supervision term, a Probation Officer will provide oversight of Mr. Fitch's conduct. Therefore, Mr. Fitch asks this Court to find he poses a minimal risk, if any, upon release under the third criterion.

### F. Relevant § 3553(a) sentencing factors warrant compassionate release

Under the compassionate release statute, when a defendant establishes the existence of extraordinary and compelling circumstances justifying relief, courts

---

[31] Under the "Age-Crime Curve" it is "well established that antisocial and criminal activity increases during adolescence, peaks around age 17 (with the peak somewhat earlier for property than for violent crime), and declines as individuals enter adulthood." Gary Sweeten et al., *Age and the Explanation of Crime Revisited*, 42 J. Youth & Adolescence 921 (2013).

17

must consider the relevant sentencing factors of 18 U.S.C. §3553(a) to determine whether a sentencing reduction or modification is warranted. 18 U.S.C. § 3582(c)(1)(A)(i).

Here, Mr. Fitch's age, compromised physical health, and the unique danger he faces of contracting COVID-19 in BOP custody, when combined with the other Section 3553(a) sentencing factors, warrant relief.

A firm release plan is in place for Mr. Fitch. Undersigned counsel spoke with Kathy Densmore, Mr. Fitch's sister, who also provided a letter for this Court. If Mr. Fitch is released from custody, Ms. Densmore has confirmed that he would live with her and her husband. As Mr. Fitch and Ms. Densmore's mother just passed away weeks ago, Ms. Densmore is looking forward to having her bother home so the family may grieve together and rebuild Mr. Fitch's life, which includes getting him the medical treatment he's needed for years.  Mr. Fitch's transfer to home confinement through this process will protect his safety concerns and help the BOP decrease its population and risk without posing a risk of transmitting COVID-19 to the greater community.

Here, a reduction or modification of Mr. Fitch's sentence would not diminish the seriousness of the offense, nor would it place the public in any danger.  The extraordinary and compelling circumstances presented by the uncontrolled spread of COVID-19 in BOP facilities—compounded by the heightened risks Mr. Fitch faces and whose ability to engage in basic self-protective measures is restricted—warrant compassionate release.

### IV.  Conclusion

The novel coronavirus that causes COVID-19 has triggered a pandemic. The virus is highly transmissible, extraordinarily dangerous, and poses a severe threat of death to older individuals with underlying illnesses. Given Mr. Fitch's age and

health issues, he is exceptionally vulnerable to contracting the deadly disease, which constitutes "extraordinary and compelling reasons" to grant his motion for compassionate release. Mr. Fitch seeks an order reducing his sentence to time served. Alternatively, Mr. Fitch seeks an order allowing him to serve a portion of any remaining reduced sentence on home confinement.

Dated: June 2, 2020.

RENE L. VALLADARES
Federal Public Defender

By: */s/ Margaret W. Lambrose*
MARGARET W. LAMBROSE
Assistant Federal Public Defender
Attorney for David Kent Fitch

**CERTIFICATE OF ELECTRONIC SERVICE**

The undersigned hereby certifies that she is an employee of the Federal Public Defender for the District of Nevada and is a person of such age and discretion as to be competent to serve papers.

That on June 2, 2020, she served an electronic copy of the above and foregoing **Emergency Motion for Order Reducing Sentence or Modifying Judgment under 18 U.S.C. § 3582 (c)(1)(A)(i) and Authorizing Any Remaining Portion of His Sentence to be Served on Home Confinement** by electronic service (ECF) to the person named below:

>NICHOLAS A. TRUTANICH
>United States Attorney
>ADAM M. FLAKE
>Assistant United States Attorney
>501 Las Vegas Blvd. South
>Suite 1100
>Las Vegas, NV 89101

>*/s/ Marlene Mercado*
>Employee of the Federal Public Defender